Emanuel C. Grillo (EG 1538)
Brian W. Harvey (BH 2518)
GOODWIN PROCTER LLP
Proposed Counsel for Debtor
 and Debtor in Possession
599 Lexington Avenue
New York, NY 10022
(212) 813-8800

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x
In re                               :     Chapter 11
                                    :
                                    :     Case No. 08-_____(___)
CERES CAPITAL PARTNERS, LLC,        :
                                    :
        Debtor.                     :
                                    :
------------------------------------x

**DEBTOR'S MOTION FOR ORDER (A) SCHEDULING COMBINED HEARING ON
DISCLOSURE STATEMENT AND CONFIRMATION
OF PLAN AND ESTABLISHING PROCEDURES FOR OBJECTING TO
DISCLOSURE STATEMENT AND PLAN; (B) APPROVING FORM AND
MANNER OF NOTICE OF COMBINED HEARING ON DISCLOSURE STATEMENT
AND CONFIRMATION OF PLAN; (C) APPROVING PREPETITION SOLICITATION
PROCEDURES; AND (D) GRANTING RELATED RELIEF**

TO THE HONORABLE JUDGES OF THE UNITED STATES
BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK:

The above-captioned debtor and debtor in possession (the "Debtor") respectfully represents:

### Jurisdiction

1.  The Court has jurisdiction over this motion (the "Motion") pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 105(a), 1126(b) and 1128 of title 11 of the United States Code (the

"Bankruptcy Code"), Rules 2002, 3017 and 3018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), General Orders 201 and 203 (the "Prepack Guidelines") of the Local Bankruptcy Rules for the Southern District of New York (the "Local Bankruptcy Rules"), and Local Bankruptcy Rule 3018-2.

## Background[1]

2. On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition for relief with this Court under chapter 11 of the Bankruptcy Code. The Debtor intends to operate its business and manage its property as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner, and no official committee has yet been appointed in this case.

3. Ceres was organized in 1999 by David Carroll and Darren Comisso (the "Company Founders") under the name "Ceres Capital, LLC" to organize and manage commercial paper conduits (the "CP Conduits"), structured investment vehicles ("SIVs") and other structured finance issuers. In the course of its work organizing and then operating such structured finance issuers, Ceres determined that it would be advantageous to establish an association with a financial institution and/or a larger investment manager, and it began to evaluate new prospective outside investors. As a result, in December 2001, XL Reinsurance America Inc. ("XLRA"), purchased a minority limited liability company interest in Ceres. Contemporaneously therewith, Stanfield Capital Partners, LLC ("Stanfield Capital"), a registered investment advisor, purchased a majority limited liability company interest in Ceres. XLRA also

---

[1] A complete description of the Debtor's business as well as a discussion of the facts and circumstances precipitating this chapter 11 case is set forth in the Disclosure Statement for Prepackaged Chapter 11 Plan of Ceres Capital Partners, LLC (the "Disclosure Statement") and the Affidavit of David Oston in Support of First Day Motions, both of which were filed contemporaneously herewith.

2

held an interest in Stanfield Capital. Ceres then changed its name to "Stanfield Global Strategies LLC".

4. In July 2002, Ceres completed the organization of and the ratings approval process for a SIV named Stanfield Victoria Finance Ltd. ("Victoria"). When that ratings process was completed, Victoria commenced the issuance of commercial paper notes (rated "P-1" and "A-1+" by Moody's and S&P, respectively), medium-term notes rated "Aaa" and "AAA" by Moody's and S&P, respectively) (together, the "Senior Debt Securities"), and capital notes (together with the Senior Debt Securities, the "Victoria Debt Securities") rated "Baa3" by Moody's. Victoria used the proceeds of the Victoria Debt Securities to finance the purchase of a diversified fixed income securities portfolio consisting principally of asset-backed securities across multiple classes. Ceres also managed three separate CP Conduits, Mica Funding, LLC, Berkeley Square Finance Ltd., and Mica Funding Ltd., which were formed in April 2000, August 2005, and December 2006, respectively.

5. During the course of 2006, Stanfield Capital, XLRA, XL SGS Holdings Inc. (the "XL Investor") and the Company Founders agreed that Stanfield Capital would pursue the sale of Stanfield Capital's interest in Ceres to third parties or the redemption of the interest by Ceres. As a result, in January 2007, the parties completed a series of transactions (the "Stanfield Buyout") pursuant to which (i) Stanfield Capital distributed a portion of the interest it held in Ceres to XLRA, which then transferred such interest to the XL Investor, (ii) Stanfield Capital sold a portion of its limited liability company interest in Ceres to the XL Investor, (iii) Ceres redeemed the remaining limited liability company interest held by Stanfield Capital in Ceres, (iv) the Debtor changed its legal name to "Ceres Capital Partners, LLC", and (v) Victoria changed its legal name to delete "Stanfield". The purchase price paid by Ceres and XLRA

3

and/or the XL Investor for the limited liability company interests sold by Stanfield Capital totaled approximately $61,000,000. Ceres financed its portion of the Stanfield Buyout by borrowing approximately (a) $45 million pursuant to that certain Credit Agreement, dated as of January 31, 2007, among Ceres, Bank of Montreal (Chicago Branch), as administrative agent, and BMO Capital Markets Financing, Inc. (the "Senior Lender") (the "Credit Agreement"), and (b) $13 million from XL Capital Finance (Europe) plc ("XL Capital") under a subordinated promissory note dated as of January 31, 2007 (the "XL Note").

6. Although the funds managed by the Debtor had little or no exposure to subprime mortgage risks, as a result of the recent subprime mortgage crisis and the related constriction of available credit to a majority of similar issuers, the underlying funds managed by the Debtor were unable to retain access to the credit markets and they were unable to find new buyers for their products. The material adverse changes in the commercial paper and medium term note markets effectively eliminated the Debtor's ability to operate its business profitably and meet its ongoing obligations under the Credit Agreement as it had prior to the commencement of this case.

7. In light of the Debtor's financial difficulties, the Debtor initiated discussions among its members, the Senior Lender, and XL Capital regarding a potential restructuring of the Debtor. The Disclosure Statement and the Prepackaged Chapter 11 Plan of Ceres Capital Partners, LLC, dated as of March 25, 2008 (the "Plan"), are the products of such discussions. On March 25, 2008, the Debtor commenced the solicitation of votes to accept or reject the Plan by distributing copies of the Plan, Disclosure Statement, ballots and related documents to all creditors entitled to vote on the Plan. The Debtor established April 11, 2008 as the deadline for receipt of votes to accept or reject the Plan.

4

LIBNY/4674184.6

8.  The overall purpose of the Plan is to provide for the restructuring of the Debtor's liabilities in a manner designed to maximize recovery to all stakeholders. Generally, the Plan provides for (i) the payment in full of holders of Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims and Other Secured Claims (the latter of which the Debtor anticipates no claims); (ii) an approximately 25% recovery to the holder of the Senior Lender Secured Claim, (iii) up to $50,000 funded out of the Senior Lender's cash collateral to satisfy General Unsecured Claims, and (iv) $75,000 funded out of the Senior Lender's cash collateral to cover certain anticipated costs and expenses in connection with the wind-up of the Debtor's estate. In addition, pursuant to the Plan, the Debtor will sell all of its assets which remain after making the distributions and reserves required under the Plan to Ivy Square Ltd. for a purchase price of $50,000. For additional information regarding the proposed sale, see Article V.F.1 of the Disclosure Statement.

9.  The solicitation of votes from the two voting classes under the Plan was a success. With respect to Class 2 (Senior Lender Secured Claim), 100% in amount and 100% in number of the holders of such Claims voted have voted to accept the Plan. With respect to Class 4 (General Unsecured Claims), approximately 79% in amount (which includes an amount attributable to the Senior Lender Unsecured Deficiency Claim) and 60% in number of General Unsecured Claimholders who voted have voted to accept the Plan.

### Prepetition Solicitation

10.  Prior to the Petition Date, the Debtor solicited approval of the Plan, as authorized by section 1126(b) of the Bankruptcy Code. The Debtor also prepared the Disclosure Statement, describing, among other things, the proposed reorganization and its effects on holders of claims against and interests in the Debtor. On or about March 25, 2008, the Debtor caused a copy of the

5

Disclosure Statement, the Plan, the appropriate ballots (the "Ballots") and a solicitation letter from the Debtor explaining the contents of the Solicitation Package to be delivered to each creditor entitled to vote on the Plan (the "Solicitation Package").

11. Under the Plan, only holders of the Senior Lender Secured Claim (Class 2) and General Unsecured Claims (Class 4) are impaired as that term is used by section 1124 of the Bankruptcy Code and entitled to vote on the Plan. The Plan provides no distributions to Class 5 and Class 6 claimants, and, therefore, these claimants will be deemed to reject the Plan. See 11 U.S.C. § 1126(g). All other classes of creditors (Classes 1 and 3) are unimpaired under the Plan and are, therefore, deemed to accept the Plan. See 11 U.S.C. § 1126(f). The Debtor established April 11, 2008 at 4:00 p.m. (prevailing Eastern time), as the deadline for the receipt of votes to accept or reject the Plan (the "Voting Deadline"), a date which is approximately 17 days following the mailing of the Ballots.

12. Notwithstanding the 20 day period prescribed in the Prepack Guidelines for solicitation periods in prepackaged chapter 11 cases, the Debtor believes that the modestly shortened solicitation period was appropriate under the circumstances of this chapter 11 case. At the time solicitation commenced, the Plan had been developed in large part through substantial and productive negotiations between the Debtor and the Senior Lender, on the one hand, and the Debtor and XL Capital, on the other hand. As a result, the holders of the vast majority of the dollar amount of the claims against the Debtor had significant familiarity with, and the opportunity to provide input on, the Plan's material terms prior to receipt of the Solicitation Package. A longer solicitation period would have delayed unnecessarily the restructuring to be implemented through the Debtor's prepackaged chapter 11 case and prolonged uncertainty concerning the Debtor's ability to adequate address its pressing issues.

13. As noted above, the Debtor's solicitation was a success, with both Class 2 and Class 4 voting to accept the Plan. Contemporaneously herewith, the Debtor has filed the Certification of Brian W. Harvey with Respect to Ballots Accepting or Rejecting the Prepackaged Chapter 11 Plan of Ceres Capital Partners, LLC, which has as Exhibit 1 thereto the declaration of James Katchadurian of Epiq Bankruptcy Solutions LLC, the Debtor's solicitation, notice and voting agent (the "Voting Agent"), regarding the results of votes on the Plan and the manner in which such votes were tabulated (the "Voting Declaration"). As noted above, Classes 5 and 6 are impaired and deemed to reject the Plan. With respect to such classes, the Debtor will request that the Plan be confirmed pursuant to section 1129(b) of the Bankruptcy Code.

## Relief Requested

14. By this Motion, the Debtor requests that the Court enter an order (the "Scheduling Order") substantially in the form attached hereto as Exhibit A granting the following relief:

(a) scheduling an objection deadline and a date for a combined hearing (the "Confirmation Hearing") on the adequacy of the Plan and Disclosure Statement on shortened notice;

(b) approving the form and manner of notice of the Confirmation Hearing;

(c) establishing procedures for objections to the Plan (including any objections to the Disclosure Statement);

(d) approving the Solicitation Procedures; and

(e) granting related relief.

## Basis For Relief

15. As set forth above, prior to the Petition Date, the Debtor solicited votes on the Plan from holders of Claims in Classes 2 and 4 (the "Voting Creditors"). Each such Class voted to accept the Plan pursuant to section 1126 of the Bankruptcy Code. The Debtor believes such

7

acceptances are sufficient to confirm the Plan pursuant to section 1129 of the Bankruptcy Code, and the Debtor does not believe additional solicitation is required.

## A. Confirmation Hearing and Objection Deadlines

16. Bankruptcy Rule 2002(b) states that "the debtor, the trustee, all creditors and the indenture trustee are to receive not less than 25 days notice by mail of (1) the time fixed for filing objections and the hearing to consider approval of a disclosure statement; and (2) the time fixed for filing objections and the hearing to consider confirmation of a . . . chapter 11 . . . plan." Fed. R. Bankr. P. 2002(b).[2] Bankruptcy Rule 9006(f) requires that if notice is to be provided by mail, then three days are to be added to any prescribed period of notice. Bankruptcy Rule 3017(a) provides that "the court shall hold a hearing on at least 25 days' notice to the debtor, creditors, equity security holders and other parties in interest . . . to consider the disclosure statement and any objections or modifications thereto." Section 1128(a) of the Bankruptcy Code provides that "[a]fter notice, the court shall hold a hearing on confirmation of a plan." Bankruptcy Rule 3017(c) provides that "[o]n or before approval of the disclosure statement, the court shall fix a time within which the holders of claims and interests may accept or reject the plan and may fix a date for the hearing on confirmation." Additionally, section X.D of the Prepack Guidelines provides that the official notice of a hearing be mailed at least twenty (20) days prior to the scheduled hearing date on confirmation of the plan and adequacy of disclosure, unless shortened by the Court.

---

[2] Bankruptcy Rule 3017(a) contains a similar requirement with respect to the hearing on approval of a disclosure statement. Here, the Debtor does not seek approval of the disclosure statement under section 1125(b) of the Bankruptcy Code. Such approval is not required because the Disclosure Statement was transmitted prepetition. Rather, the Debtor only seeks a determination that the solicitation complied with section 1126(b) of the Bankruptcy Code, in that it complied with applicable non-bankruptcy law and the Disclosure Statement contained "adequate information".

8

17. Because the Debtor has already successfully solicited acceptance of the Plan and that acceptance, as demonstrated herein, was overwhelming, the Debtor requests a single hearing, the Confirmation Hearing, to seek the Court's approval of the Disclosure Statement under section 1126(b) of the Bankruptcy Code and confirmation of the Plan. The Debtor requests that the Court set (i) the Confirmation Hearing on the earliest date convenient to the Court that is at least thirty (30) days after the Petition Date and (ii) a date by which all objections to the Disclosure Statement and Plan must be filed that is at least five (5) days prior to the Confirmation Hearing. The Debtor believes that these dates comply with the Bankruptcy Code, Bankruptcy Rule and Local Bankruptcy Rules and provide creditors and other parties in interest with ample time to file any objections.

### B. Procedures for Objecting to Disclosure Statement and Plan

18. The Debtor proposes that this Court direct that objections to confirmation of the Plan (including objections to the Disclosure Statement), if any, shall:

    (a)    be in writing;

    (b)    comply with the Bankruptcy Rules, the Local Bankruptcy Rules and other rules and orders of this Court;

    (c)    set forth the name of the objector, and the nature and amount of any claim or interest asserted by the objector against the estate or property of the Debtor;

    (d)    state with particularity the legal and factual basis for such objection; and

    be filed with the Clerk of the United States Bankruptcy Court for the Southern District of New York, together with proof of service thereof, and served by personal service or by overnight delivery, so as to be <u>ACTUALLY RECEIVED</u> no later than 5:00 p.m. (prevailing Eastern time) on such date as determined by the Court as reflected in the Confirmation Notice (as defined below) (the "<u>Objection Deadline</u>") by (i) Goodwin Procter LLP, Counsel for the Debtor, The New York Times Building, 620 Eighth Avenue, New York, NY 10018-1405, Attn: Emanuel C. Grillo; (ii) Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, NY 10004, Attn: Paul K. Schwartzberg; (iii) those parties who have filed a notice of

9

appearance and request for service of pleadings in this chapter 11 case; (iv) the attorneys for the Senior Lender Agent, Chapman and Cutler LLP, 111 West Monroe Street, Chicago, IL 60603-4080 (Attn: James E. Spiotto, Esq.), and (v) counsel to XL Capital, Willkie Farr & Gallagher, LLP 787 Seventh Avenue, New York, NY 10019 (Attn: Michael Kelly, Esq.).

19. The Debtor submits that the foregoing procedures for objecting to the Plan and Disclosure Statement are in the best interests of all parties in this chapter 11 case and should be approved.

C.  **Approval of Form and Manner of Notice of Confirmation Hearing**

20. The Debtor proposes to mail or cause to be mailed (via first class United States mail) a copy of the notice attached hereto as Exhibit B (the "Confirmation Notice") to the Debtor's creditors and all equity holders of record, which mailing will occur as quickly as possible after the entry of the Scheduling Order. The Confirmation Notice contains a brief summary of the Plan, the date of the Confirmation Hearing and the deadline and procedures for objecting to the Disclosure Statement and/or the Plan. The Debtor proposes to set April 15, 2008 as the record date for determining which non-Voting Creditors and other equity holders are entitled to receive the Confirmation Notice.[3]

21. In addition, the Confirmation Notice will be served upon (i) the Office of the U.S. Trustee for the Southern District of New York, (ii) the District Director for the Internal Revenue Service, (iii) counsel for the Senior Lender Agent, (iv) counsel to XL Capital, and (v) any party in interest requesting notice in this chapter 11 case.

22. Prior to the Confirmation Hearing, the Debtor proposes to publish the Confirmation Notice (or a summary thereof) once in the national edition of The Wall Street Journal. The publication will be at least twenty (20) days prior to the Confirmation Hearing.

---

[3] The Prepack Guidelines require that the Confirmation Notice be served on all record holders of claims and interests who are not entitled to vote on the Plan (determined as of a record date that is not more than 10 days prior to the Petition Date).

10

23. The Debtor believes that the above service of the Confirmation Notice will provide sufficient notice to all parties-in-interest in the Debtor's chapter 11 case of the Confirmation Hearing as well as the procedure for objecting to the adequacy of the Disclosure Statement and confirmation of the Plan. In addition, as Bankruptcy Rule 2002(l) permits the Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement notice," the Debtor believes that publication of the Confirmation Notice will provide sufficient notice to any party in interest who did not otherwise receive notice.

### D. Approval of Solicitation Procedures

24. As described above, the Debtor distributed the Disclosure Statement and solicited approval of the Plan prior to the commencement of this chapter 11 case. Section 1126(b) of the Bankruptcy Code specifically provides, in pertinent part, that

> [A] holder of a claim or interest that has accepted or rejected the plan before the commencement of the case under this title is deemed to have accepted or rejected such plan, as the case may be, if— (1) the solicitation of such acceptance or rejection was in compliance with any applicable nonbankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation . . . .

11 U.S.C. § 1126(b). Accordingly, the Debtor seeks a determination from this Court that the prepetition Solicitation Procedures utilized by the Debtor were in compliance with applicable nonbankruptcy law governing the adequacy of disclosure in connection with the solicitation and in accordance with section 1126(b) of the Bankruptcy Code.

25. The Debtor also seeks this Court's determination that the Solicitation Procedures were in compliance with the Bankruptcy Code. Bankruptcy Rule 3017(d) sets forth the materials that must be provided to holders of claims for the purpose of soliciting their votes of acceptance or rejection of a plan of reorganization. Bankruptcy Rule 3017(e) provides that "the court shall consider the procedures for transmitting the documents and information required by [Rule

11

3017(d)] to beneficial holders of stock, bonds, debentures, notes, and other securities, determine the adequacy of the procedures, and enter any orders the court deems appropriate."

        (i)    *Approval of Voting Deadline*

26. Bankruptcy Rule 3018(b) provides that prepetition acceptances or rejections of a plan are valid only if the plan was transmitted to substantially all the holders of claims or interests in each solicited class and the time for voting was not unreasonably short. Bankruptcy Rule 3018(b) also requires that the solicitation comply with section 1126(b) of the Bankruptcy Code (i.e., that it comply with applicable nonbankruptcy law or contain "adequate information").

27. The Debtor commenced solicitation of votes for approval of the Plan on or about March 25, 2008. The Debtor established 4:00 p.m. (prevailing Eastern time) on April 11, 2008 as the Voting Deadline, which is a period of 17 days. The Ballots stated in clear and conspicuous language that all ballots must be properly executed, completed, and delivered to the Voting Agent, so that they were received by the Voting Agent no later than the Voting Deadline. The holders of Classes 2 and 4 Claims were given the opportunity to return their Ballots by regular mail, hand delivery or overnight courier to the Voting Agent.

28. As noted above, the Plan proposed by the Debtor encompasses the terms of the reorganization discussed and negotiated with the Senior Lender Agent and XL Capital over the course of several months. Each Voting Creditor had adequate time to consider the Plan and Disclosure Statement. Indeed, numerous Voting Creditors timely returned their Ballots to accept or reject the Plan. Therefore, the Debtor submits that the voting period under the Solicitation Procedures followed by the Debtor was not unreasonably short and should be approved.

LIBNY/4674184.6

(ii) *Approval of Solicitation Package and Transmittal*

29. The Debtor caused the Solicitation Package to be transmitted to the Voting Creditors.

30. Bankruptcy Rule 3017(d) requires the Debtor to mail a form of ballot, which substantially conforms to Official Form No. 14, only to "creditors and equity security holders entitled to vote on the plan." Fed. R. Bankr. P. 3017(d). The Debtor distributed to creditors one or more Ballots in the form of the Ballots attached hereto as Exhibits B-1 and B-2. The forms for the Ballots are based on Official Form No. 14 and those provided by the Local Bankruptcy Rules, but have been modified to address the particular aspects of this chapter 11 case and to include certain additional information that the Debtor believes to be relevant and appropriate for each class of claims. The appropriate Ballot forms were distributed to holders of claims in the following Classes under the Plan:

| | |
|---|---|
| Exhibit C-1 | Ballot for Holder of Class 2 Claims |
| Exhibit C-2 | Ballot for Holders of Class 4 Claims |

31. The Ballots provided the Voting Creditors with notice of the time within which acceptances and rejections of the Plan had to be received. The Debtor believes that the Solicitation Package contained adequate information to enable holders of claims to make a determination as to whether to accept or reject the Plan.

32. The Solicitation Package was transmitted to the Voting Agent who, in turn, forwarded the Solicitation Package by mail to the Senior Lender Agent and the holders of the General Unsecured Claims. Such holders were instructed to return their Ballots by regular mail, hand delivery or overnight courier to the address specified with the Ballot. In addition, the Solicitation Packages contained pre-addressed envelopes for the return of the Ballots.

33. Holders of claims against the Debtor or interests in the Debtor other than those in Class 2 and Class 4 were not provided with a Solicitation Package. Such holders of claims or interests are either (i) unimpaired and presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code or (ii) impaired and deemed to have rejected the Plan either pursuant to section 1126(g) of the Bankruptcy Code or by the terms of the Plan itself in accordance with the Prepack Guidelines. See Prepack Guidelines § III.D(i)(b) (authorizing debtor to seek confirmation of prepackaged plan of reorganization where class of claims or interests, which is receiving or retaining property under or pursuant to the plan, were not solicited prepetition and whose rejection of the plan has been assumed by the Debtor for purposes of confirming the plan). See also In re Melcher, 329 B.R. 865, 875-76 (Bankr. N.D. Cal. 2005) (finding that debtor was not required to solicit votes of creditors that were receiving distributions under the plan but deemed to reject the plan); In re Union County Wholesale Tobacco & Candy Co., 8 B.R. 442, 443 (Bankr. D. N.J. 1981) (holding that the debtor need not solicit the classes subject to "cramdown" treatment nor provide the members of such classes with a disclosure statement); In re Egan, 142 B.R. 730, 733 (Bankr. E.D. Pa. 1992) (permitting the Debtor not to resolicit a class previously deemed to reject the debtor's original plan but receiving a nominal distribution under the debtor's revised plan).

    (iii) *Approval of Procedures for Vote Tabulation*

34. Section 1126(c) of the Bankruptcy Code provides:

> A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.

14

11 U.S.C. § 1126(c). Further, Bankruptcy Rule 3018(a) provides that the "court after notice and hearing may temporarily allow [a] claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan." Fed. R. Bankr. P. 3018(a).

35. The Debtor requests that the Court approve the vote tabulation methodology utilized by the Debtor. The Debtor did not count or consider for any purpose in determining whether the Plan has been accepted or rejected the following Ballots:

(a) Any Ballot received after the Voting Deadline (unless the Debtor granted an extension of the Voting Deadline with respect to the Voting Creditor submitting such Ballot);

(b) Any Ballot that indicated neither an acceptance nor rejection, or indicated both acceptance and rejection, of the Plan;

(c) Any Ballot cast by a person or entity that did not hold a claim in a class that was entitled to vote to accept or reject the Plan;

(d) Any unsigned Ballot;

(e) Any Ballot that was illegible or contained insufficient information to permit the identification of the claimant; or

(f) Any form of Ballot other than the official form sent by the Solicitation Agent or a copy thereof.[4]

36. Furthermore, the Debtor required that the Voting Creditors vote all of their claims within a particular class either to accept or reject the Plan. Notwithstanding Bankruptcy Rule 3018(a), the Debtor proposes that whenever two or more ballots were cast voting the same claim prior to the Voting Deadline, the last ballot received prior to the Voting Deadline should be deemed to reflect the voter's intent and to thus supersede any prior ballot(s), without prejudice to the Debtor's right to object to the validity of the second ballot on any basis permitted by law,

---

[4] As noted in the Voting Declaration, a vote accepting the Plan by Valera Global, Inc. was received by the Voting Agent by facsimile before the Voting Deadline, and was included in the tabulation by the Voting Agent.

15

including under Bankruptcy Rule 3018(a); and, if the objection to such second ballot or subsequent ballot is sustained, to count the first ballot for all purposes.

37. The foregoing Solicitation Procedures or those substantially similar have been approved in other prepackaged chapter 11 cases in this District and others. See In re Trico Marine Services, Inc., Case No. 04-17985 (SMB) (Bankr. S.D.N.Y. Dec. 22, 2004); see also In re McLeodUSA Inc., Case No. 05-63230 (JHS) (Bankr. N.D. Ill. Oct. 31, 2005); In re IWO Holdings, Inc., Case No. 05-10009 (PWJ) (Bankr. D. Del. Jan. 4, 2005); In re Orius Corp., Case No. 02-415127 (BWB) (Bankr. N.D. Ill. Nov. 18, 2002).[5]

        (iv) *Non-Transmission of Disclosure Statement To Certain Creditors and Equityholders*

38. For the reasons set forth herein, the Debtor requests a waiver of the Bankruptcy Rule requirement that the Debtor mail a copy of the Plan and Disclosure Statement to holders of creditors and equity interest holders deemed to accept or to reject the Plan. See Bankruptcy Rule 3017. The Debtor submits that because it solicited acceptances and rejections of the Plan prepetition, and thus no Disclosure Statement was "approved" under Bankruptcy Rule 3017, such rule is not applicable and its requirements not germane. In any event, it would be an unnecessary administrative burden on the Debtor to transmit the Disclosure Statement and Plan to holders of claims and interests deemed to accept or to reject the Plan. Accordingly, the Debtor submits that it is not appropriate to require the Debtor to transmit a copy of the Solicitation Package to the holders of claims or interests other than the Voting Creditors.

---

[5] Each of these orders are unpublished. Due to their voluminous nature, they have not been attached to this Motion. Counsel to the Debtor will provide copies of any or all of these orders upon reasonable written request.

16

LIBNY/4674184.6

## E. Adequacy of the Disclosure Statement

39. At the Confirmation Hearing, in addition to seeking confirmation of the Plan, to the extent there is no applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with the pre-petition solicitation, the Debtor will seek the Court's ruling that the prepetition solicitation complied with section 1126(b)(2) of the Bankruptcy Code because the Disclosure Statement provided adequate information within the meaning of section 1125(a)(1) of the Bankruptcy Code. Accordingly, the Debtor hereby requests that at the Confirmation Hearing, to the extent necessary, the Court find that the Disclosure Statement contains adequate information as defined in section 1125 of the Bankruptcy Code.

40. Section 1125(a) of the Bankruptcy code defines "adequate information" as

> [I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan....

11 U.S.C. § 1125(a)(1). The Debtor submits that the Disclosure Statement contains adequate information within the meaning of section 1125(a) of the Bankruptcy Code.

41. The Disclosure Statement is extensive and comprehensive. It contains descriptions and summaries of, among other things, (a) the Plan; (b) certain events preceding the commencement of this chapter 11 case; (c) claims asserted against the Debtor's estate; (d) risk factors affecting the Plan; (e) a liquidation analysis setting forth the estimated return that creditors would receive in a hypothetical chapter 7 case; (f) financial information and valuations that would be relevant to creditors' determinations of whether to accept or reject the Plan; and (g) federal tax law consequences of the Plan.

42. In addition, the Disclosure Statement was the subject of review and comment by counsel to the Senior Lender Agent and XL Capital. The Senior Lender Agent and XL Capital represent the vast majority of the claims against the Debtor. Accordingly, the Debtor submits that the Disclosure Statement contains adequate information within the meaning of section 1125(a) of the Bankruptcy Code and should be approved.

### F. Related Relief

*(i) Waiver of Meeting of Creditors if Plan is Confirmed within 60 Days*

43. The Debtor seeks relief from compliance with certain Bankruptcy Rule and Bankruptcy Code requirements. Specifically, pursuant to section 341(e) of the Bankruptcy Code, the Debtor requests that the Court enter an order directing the United States Trustee not to convene a meeting of creditors or equity security holders if the Plan is confirmed within sixty (60) days from the Petition Date. If the Plan is confirmed within sixty (60) days from the Petition Date, the Debtor believes that a waiver of the meeting of creditors and equity security holders is appropriate.

*(ii) Waiver of Filing Monthly Operating Reports if Plan is Confirmed within 60 Days*

44. Finally, the Debtor requests that the Court enter an order waiving the Debtor's requirement to file or provide any periodic operating reports pursuant to the Bankruptcy Code, Bankruptcy Rules, or Local Rules (except as may be provided specifically in the Plan or order confirming the Plan) if the Plan is confirmed within sixty (60) days from the Petition Date; provided, however, that the Debtor shall provide the Office of the United States Trustee with information regarding disbursements made by the Debtor.

## Waiver Of Memorandum Of Law

45. Because this Motion presents no novel issues of law and the authorities relied upon by the Debtor are set forth herein, the Debtor respectfully request that the Court waive the requirement for the filing of a separate memorandum of law in support of this Motion pursuant to Local Bankruptcy Rule 9013-1(b).

## Notice

46. Notice of this Motion will be given to: (i) the Office of the United States Trustee, (ii) Chapman & Cutler LLP, as counsel for Bank of Montreal (Chicago Branch), as administrative agent, (iii) the parties listed on the Debtor's list of its largest unsecured creditors and (iv) Willkie Farr & Gallagher, LLP, as counsel to XL Capital Finance (Europe) plc. The Debtor submits that under the circumstances, no other or further notice is required.

## No Prior Request

47. No prior motion for the relief requested herein has been made to this Court or any other court.

LIBNY/4674184.6

WHEREFORE, the Debtor respectfully requests that this Court enter an order, substantially similar to the form annexed hereto as Exhibit A, granting the Motion and such other relief as may be just and proper.

Dated: New York, New York
April 17, 2008

                GOODWIN PROCTER LLP

                By: /s/ Emanuel C. Grillo

                Emanuel C. Grillo (EG 1538)
                Brian W. Harvey (BH 2518)
                599 Lexington Avenue
                New York, New York 10022
                (212) 813-8800
                Proposed Counsel for the Debtor and Debtor in Possession

20

LIBNY/4674184.6